## MEINECKE & CO. v. STRANSKY & CO.

(Circuit Court, S. D. New York. April 16, 1909.)

PATENTS (§ 328*)—VALIDITY OF INFRINGEMENT—BED PAN.

    The Hogan patent, No. 651,310, for a bed and douche pan, was not anticipated and discloses invention; also *held* infringed.

    [Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity. On final hearing.

Edmond Congar Brown, Arthur v. Briesen, and Fritz v. Briesen, for complainant.

Fred H. Bowersock, for defendant.

PLATT, District Judge. This is an equity suit on letters patent to Meinecke & Company, assignee of Daniel Hogan, No. 651,310, for new and useful improvements in bed or douche pans. There is only one claim, and that described the invention, and is therefore set forth in full:

    "A bed and douche pan having elevated side edges extended the length of the pan, thigh-supports, 4″, at the height of said edges, terminating near the rear of the pan, and leaving an opening between the end of the pan and the termination of said supports, and formed integral with the side edges of the pan, concave depressed buttock-supporting portion, 4′, near the front of the pan, and a depressed concave overhanging rim near the front of the pan; said pan being wider at the front than at the rear, so as to give increased capacity at the front or overhanging rim, and said opening or spout, 2, being open on top and located below the level of the thigh-supports, substantially as described."

When Hogan applied for the patent, there were bed pans and douches in the art; but none of them seem to have hit the mark. Hogan himself had made a valiant, but futile, attempt in his former patent; and in his present effort he was put to much trouble before he could convince the examiners that he was entitled to what he asked for. At last he convinced them, almost against their will, and the device made under his patent caught the market. It met with great success, and it met with that success, because it actually does the things which are claimed for it. Doctors and nurses praise it in unmeasured terms, and its popularity is a real, substantial thing, not a creature of

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

freak or fancy. To have given so much comfort to the sick is certainly a deed which is entitled to careful thought before one presumes to divest the patent of the material benefits which the complainant urges upon us as a right.

The results which have followed upon the marketing of this device strengthen the prima facie faith in patentability which was forced upon the examiners. The argument was pretty well set forth in the letter of the attorney for the patentee under date of April 18, 1900. Many a device less worthy than this has been protected by the courts. The utility of the device is obvious. The novelty is not seriously affected by the devices urged in anticipation. The only possible question is as to whether he discovered or invented anything. We can find the best references which he had to work upon in Haertel, 371,193; Dugot, 413,593; Vaughn, 543,516; and his own earlier patents, 581,588 and 633,004. There will be found scattered among the devices to which these patents relate overhanging rims extending the length of the pan, integral with the side edges, and an opening at the end of the pan which gives natural and easy access to the patient. We also find at least one which is wider at the portion where the buttocks could rest with more or less comfort, and the gradual rise of the overhanging rim from the buttocks portion could have been utilized to a limited extent for the support of the thighs.

We do not find, however, in any patent of the prior art, "thigh supports, 4″, at the height of said edges, terminating near the rear of pan, and leaving an opening" to facilitate access to the patient. Right around this point is the crux of the case. Dugot and Vaughn are the only ones who, prior to this patent, had overhanging rims which could be used for thigh supports, in any sense of those words. Hogan's "cushions, 10," were not thigh supports in the sense of the "thigh supports, 4″." Hogan's cushions were calculated to relieve the limbs from the roughness of the ordinary bed pan. Dugot had no idea of using his overhanging rim for thigh supports. It may have been floating in the haze of Vaughn's mind, but was not crystallized into certainty. To discover that by important changes the rim of either patent could be put to the complete use which it has in the patent in suit required, in my opinion, a touch of that divine fire called "inventive genius."

Another way of putting it: The central and valuable thought is to utilize the integral overhanging rim, so that at its highest point it furnishes support for the thighs and brings them to the position they should be in for practical purposes, and at its lowest point takes care of the buttocks and the spine, and all this with an easily adjustable, sanitary, comfortable, and fairly secure pan, so constructed as to give the doctor and nurse instant and easy access to those parts of the patient which from the necessities of the case require attention. Some of its advantages can be found in other constructions; but the bringing of them all together in one device, with the added advantages above mentioned, was, as I see it, the discovery of a new and useful thing.

The comfort of a sick person is not a matter which can be compassed by tricks of trade. The principles of suggestion can hardly be enforced upon a person who lies in extremis. It is easy now to assume

a flippant manner, and to tell us that no advance upon the art has been made, except, possibly, to make the pan of such a shape that it fits the average human frame somewhat better than of yore; but the cold fact remains, staring us in the face, that for years persons of experience had seen the necessity for advances in this doleful art, and every attempt had been barren and futile until Hogan came, who, after two valiant efforts, both of which missed the mark, managed at last, after a painful struggle with the examiner, to reach the monopoly which defendant so lightly invades.

The defendant is probably within his rights in attacking the patent; but it comes with ill grace from one who entered upon such business relations with the complainant as to make him almost a licensee. He certainly is unfortunate, in that he marked complainant's patented stamp upon a construction which he now insists has no patented protection. The legal right to change his mind may be admitted; but the morality of the act is another matter. Infringement is plain, unless one sticks in the bark as to the meaning of the claim.

The patentee had a rough journey through the Patent Office, and it was a long time before he had rearranged his earlier claims and condensed the subject-matter into a form which met the views of the examiner. In one of his earlier arguments he protested that his was a "one-piece device," and changed his claim so that the thigh supports are formed "integral with the side edges of the pan." Every metal pan with its side edges extended into an overhanging metal rim was necessarily made in two pieces. So was the porcelain pan, for that matter. There could be only two reasons for using the word "integral." Since the rim itself was to be a thigh support, it must be made integral with the side edge in such a way as to avoid any sharpness which would disturb the patient where the rim joins the edge, and more particularly the "cushions, 10," which acted in the earlier patents to ease the patient's body, were to be eliminated. These had been separate pieces. Now no separate piece would be needed. The overhanging rim would now perform the function of the cushions, as well as its own other functions.

It is unbecoming in the defendant to be so nice about definitions after his admitted relations with the complainant; but, in any event, the pan of the patent is essentially, and for every purpose, and from every view, a one-piece device, and the overhanging rim is integral with the side edges.

Defendant criticises the proofs of infringing sale; but here, again, he is unreasonably technical. The proofs about the sale, taken in connection with defendant's catalogue, make out, to my mind, a clear case of actual sale within the district, and an avowed purpose to make as many more as possible.

Let the usual injunction issue.